IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID NGUYEN, an individual; )
THAO NGUYEN, an individual; and )
WYNN WYNN SOLUTIONS, LLC, an )
Oklahoma Limited Liability Company, )
)
          Plaintiffs, )
)
v. )  Case No.  CIV-23-01195-JD
)
PEAK EQUITY GROUP, LLC, a )
Kansas Limited Liability Company; )
HIGH PEAKS FINANCIAL, LLC, a )
Kansas Limited Liability Company; and )
PAUL SAUER, an individual, )
)
          Defendants. )

**ORDER**

Before the Court is Defendants Peak Equity Group, LLC and High Peaks Financial, LLC's Motion for Sanctions ("Motion") [Doc. No. 30]. Plaintiffs filed a response in opposition ("Response") [Doc. No. 35], and Defendants filed a reply ("Reply") [Doc. No. 36]. Because the Court determines that sanctions are not appropriate under 28 U.S.C. § 1927 or its inherent authority, the Court denies the Motion.

**I.    BACKGROUND**

On December 28, 2023, Plaintiffs—David Nguyen, Thao Nguyen, and Wynn Wynn Solutions, LLC (collectively "Plaintiffs")—initiated this lawsuit relating to alleged conduct regarding mortgage agreements between Plaintiffs David Nguyen and Wynn Wynn Solutions, LLC and Defendants Peak Equity Group, LLC and High Peaks

Financial, LLC[1] and to the foreclosure of property related to the mortgage agreements. [Doc. No. 1]. Plaintiffs asserted claims of abuse of process, breach of contract, slander of title, quiet title, fraud, and outrage. [*Id.*]. On January 9, 2024, with leave of Court, Plaintiffs filed a First Amended Complaint asserting the same causes of action. [Doc. No. 6].

On April 11, 2024, the Court issued an Order to Plaintiffs to Show Cause why Plaintiffs had not timely served Defendants pursuant to the requirements of Federal Rule of Civil Procedure 4. [Doc. No. 11]. The Court requested that Plaintiffs within fourteen days either (1) show cause why Plaintiffs had not timely served Defendants, (2) file a written proof of service or waiver of service for Defendants, or (3) file a stipulation of voluntary dismissal as to Defendants that complies with Federal Rule of Civil Procedure 41. [*Id.* at 2]. Plaintiffs did not file a response to the Order to Plaintiffs to Show Cause, nor did Plaintiffs file a written proof of service, waiver of service, or voluntary dismissal.

On April 19, 2024, Defendants filed a Motion to Dismiss First Amended Complaint, arguing that the Court should dismiss Plaintiffs' claims because (1) Plaintiffs did not properly or timely serve Defendants, (2) Plaintiffs' claims violated the rule against claim-splitting as Plaintiffs also had claims pending against Defendants in state court, and (3) the *Colorado River* doctrine allowed the Court to refuse to exercise

---

[1] "Defendants," when used herein, refers to Defendants Peak Equity Group, LLC and High Peaks Financial, LLC. Plaintiffs named an additional Defendant, Paul Sauer, but Defendants state, and Plaintiffs do not contest, that Plaintiffs did not serve Paul Sauer. *See* [Doc. No. 30 at 6 n.2].

jurisdiction over Plaintiffs' claims. [Doc. No. 12]. Plaintiffs did not file a response to Defendants' Motion to Dismiss First Amended Complaint but filed a Second Amended Complaint on May 10, 2024. [Doc. No. 21]. In Plaintiffs' Second Amended Complaint, Plaintiffs asserted causes of action of abuse of process and outrage. [*Id.* at 4–12].[2] The Court ordered the parties to file a response detailing what authorized Plaintiffs to file a Second Amended Complaint [Doc. No. 22], which both parties did. [Doc. Nos. 23 and 24]. The Court then denied Defendants' Motion to Dismiss First Amended Complaint as moot. [Doc. No. 25 at 2].

Defendants then moved to dismiss Plaintiffs' Second Amended Complaint, arguing the Court should dismiss Plaintiffs' claims because (1) Plaintiffs did not properly or timely serve Defendants and (2) Plaintiffs' claims violated the rule against claim-splitting. [Doc. No. 26]. Plaintiffs did not file a response to Defendants' Motion to Dismiss Second Amended Complaint. The Court issued a Show Cause Order requiring Plaintiffs to show cause by June 24, 2024, why they failed to respond. [Doc. No. 28 at 1–2]. On June 24, 2024, Plaintiffs voluntarily dismissed the case without prejudice. [Doc. No. 29].

Defendants then filed this Motion, seeking sanctions from Plaintiffs' attorney Brittini Jagers-Johnson ("Jagers-Johnson") pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. [Doc. No. 30 at 18–23]. Defendants request fees totaling $25,658.98, plus additional fees related to pursuing sanctions. [*Id.* at 23–24]. Defendants argue they

---

[2] The Court uses CM/ECF page numbering from the top of docket filings in this Order.

are entitled to sanctions because Jagers-Johnson pursued meritless claims on behalf of Plaintiffs, which "multiplied the proceedings in this case, resulting in an increase in the cost of the proceedings," and which was "unreasonable and vexatious." [*Id.* at 20 (quoting *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1220–21 (10th Cir. 2006) (internal quotation marks omitted)]. Defendants contend Jagers-Johnson's sanctionable conduct is shown by "the substantive and procedural issues repeatedly raised in Defendants' Motions to Dismiss" and "her decision to move forward with [Plaintiffs'] claims when no clear legal basis supported them." [*Id.* (internal quotation marks omitted)]. Defendants assert that Jagers-Johnson should not have asserted "bogus" claims after Defendants raised the issues of improper service and claim-splitting in their Motion to Dismiss First Amended Complaint. [*Id.* at 20–21]. Defendants also assert that Jagers-Johnson's failure to comply with Court orders "manifests reckless disregard of the attorney's duties to the court." [*Id.* at 21].

Jagers-Johnson filed a Response to Defendants' Motion for Sanctions. [Doc. No. 35]. She counters that Plaintiffs' claims did not violate the rule against claim-splitting and that Plaintiffs' failure to serve within ninety days does not warrant the imposition of sanctions. [*Id.* at 2–9].

In Defendants' Reply, they clarify that they seek sanctions for attorneys' fees accrued after Defendants' Motion to Dismiss First Amended Complaint because Defendants' Motion to Dismiss First Amended Complaint alerted Jagers-Johnson to the defects in Plaintiffs' case. [Doc. No. 36 at 2–3; *see also id.* at 8 (arguing that the Court should "grant Defendants' Motion and impose sanctions against Attorney Jagers-

4

Johnson by way of Defendants' additional attorney fees and costs expended after the filing of Defendants' Motion to Dismiss First Amended Complaint, when the service deadline had passed and the mandatory dismissal requirements of Rule 4(m) were triggered[.]")]. Defendants also assert in their Reply that Jagers-Johnson's Response serves as an additional basis for sanctions because its only purpose was to harass opposing counsel, to delay the lawsuit, or to increase costs. [*Id.* at 10].

## II.    LEGAL STANDARDS

### A. Standard for sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Court has "broad discretion" to sanction attorneys who unreasonably multiply the proceedings. *Frey v. Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022). However, the Tenth Circuit has described the § 1927 standard as an "extreme standard" and "cautioned that a district court should act under § 1927 'only in instances evidencing a serious and standard disregard for the orderly process of justice.'" *Id.* at 1244 (quoting *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015)).

Section 1927 does not require the moving party to demonstrate bad faith. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). "When dealing with a lawyer, the courts 'are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state

5

that one who acts with an empty head and a pure heart is not responsible for the consequences.'" *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Okla.*, 511 F. App'x 753, 756 (10th Cir. 2013) (unpublished) (quoting *Hamilton*, 519 F.3d at 1202). A court may award sanctions against an attorney for "acting recklessly or with indifference to the law[.]" *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

Because the Court has broad discretion to grant § 1927 sanctions, the Tenth Circuit will review its decision for "abuse of discretion" and will only overturn such a decision if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). The Tenth Circuit describes its appellate role on a district court's discretionary decision as limited: it will not overturn a decision on abuse-of-discretion review because it finds "it harsh or because [the circuit] would have made a different decision; [the circuit] will reverse only if the award fell 'beyond the bounds of the rationally available choices before [the district court] given the facts and the applicable law in the case.'" *See Frey*, 41 F.4th at 1242 (quoting *Madron v. Astrue*, 646 F.3d 1255, 1257 (10th Cir. 2011)); *see also id.* at 1245 (explaining that the circuit "will not reverse an award of sanctions under § 1927 simply because [it] might have acted differently in the district court's position—[the circuit's] review is limited to whether the district court abused its discretion").

### B. Standard for sanctions under the Court's inherent authority

The Court has inherent authority to impose sanctions "for abuse of the judicial process, or, in other words, for bad faith conduct in litigation." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (internal quotation marks omitted). The

6

Supreme Court has specified the "narrowly defined circumstances" in which courts should exercise this inherent authority to impose attorneys' fees on counsel as instances in which counsel acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). To grant sanctions under its inherent authority, the Court is required to "make a finding of bad intent or improper motive." *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006) (internal quotation marks omitted).

The Tenth Circuit reviews the Court's decisions regarding sanctions pursuant to its inherent authority "only for an abuse of discretion." *Farmer*, 791 F.3d at 1256. "A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." *Id.*

### III. ANALYSIS

**A. Defendants have not demonstrated Plaintiffs maintained "meritless" claims justifying sanctions under 28 U.S.C. § 1927.**

Defendants assert the Court should sanction Jagers-Johnson pursuant to § 1927 because Jagers-Johnson pursued meritless litigation. In their Motion, Defendants seem to allege two ways in which Jagers-Johnson had no plausible basis for moving forward with Plaintiffs' claims—substantively Plaintiffs' claims lacked merit because they violated the rule against claim-splitting and procedurally Plaintiffs had not properly

served Defendants.[3] [Doc. No. 30 at 20–21]. Jagers-Johnson devoted substantial argument in her Response to addressing whether claim-splitting rendered Plaintiffs' claims meritless. [Doc. No. 35 at 2–7]. Defendants, however, did not respond to Jagers-Johnson's arguments regarding claim-splitting and instead asserted that Jagers-Johnson's arguments regarding claim-splitting are "unresponsive to the issues related to sanctions[.]" [Doc. No. 36 at 8]. Because Defendants do not provide argument regarding whether Plaintiffs' claims lacked substantive merit, the Court does not address that ground for sanctions and instead examines whether the following conduct warrants sanctions: (1) Jagers-Johnson's failure to timely serve Defendants, (2) Jagers-Johnson's failure to comply with Court orders, and (3) allegations made in Jagers-Johnson's Response.

Turning first to Defendants' contention that Jagers-Johnson's lack of timely service upon Defendants rendered Plaintiffs' claims fatally flawed, the Court cannot agree. The Court recognizes that Jagers-Johnson did not comply with the requirements of Federal Rule of Civil Procedure 4 pertaining to timely service of Defendants. The only specific basis for challenging Plaintiffs' service upon Defendants Peak Equity Group, LLC and High Peaks Financial, LLC  raised in Defendants' Motion or Reply is

---

[3] Defendants reference "the existence of procedural, legal, and factual infirmities" in Plaintiffs' case. [Doc. No. 36 at 4]. However, Defendants only provide substantive argument regarding procedural deficiencies due to untimely service.

that service was untimely.[4] Defendants' Motion makes passing references to "improper" service but never substantively enumerates any deficiencies in Plaintiffs' service upon Defendants Peak Equity Group, LLC and High Peaks Financial, LLC besides untimely service.[5] Jagers-Johnson states, and Defendants do not contest, that Plaintiffs served Defendants Peak Equity Group, LLC and High Peaks Financial, LLC two days after the deadline for service. [Doc. No. 35 at 8]. Defendants state that Plaintiffs never served Defendant Paul Sauer. [Doc. No. 30 at 6 n.2].

> Federal Rule of Civil Procedure 4(m) states:
>
> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Rule 4(m) outlines the standard for when courts *must* extend the time for service. However, the Tenth Circuit has also recognized, as noted by Jagers-Johnson in her Response [Doc. No. 35 at 8], that circumstances exist when courts *may* grant *permissive* extensions of time for service. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). Accordingly, even if a plaintiff fails to demonstrate good cause for failure to effectuate service within the ninety days, the Court has discretion to extend time for

---

[4] *See* [Doc. No. 36 at 3, subtitle 1 ("Attorney Jagers-Johnson knew she had failed to *timely* serve HPF or PEG by the time Defendants filed their first Motion to Dismiss.") (emphasis added)].

[5] *See, e.g.*, [Doc. No. 36 at 4 (stating "Attorney Jagers-Johnson does not dispute (because she cannot) that . . . she had 'acknowledged [to Defendants' counsel that] service had not been accomplished *properly* or timely on the Defendants'") (emphasis added)].

service upon the consideration of certain factors. *See id.* at 842; *Bruce v. United Parcel Servs., Inc.*, CIV-07-226-C, 2007 WL 4208715, at *2 (W.D. Okla. Nov. 26, 2007) (outlining the factors courts consider when granting a permissive extension, including the statute of limitations, attempts at service, and prejudice to defendants). Courts have retroactively extended the time for service or allowed an opportunity to cure service issues. *See Bruce*, 2007 WL 4208715, at *2 (granting a permissive extension of time for service after defendant had moved to dismiss for insufficient service of process because plaintiff served defendant outside the deadline); *see also Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) (noting that "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant"). And the plain language of Rule 4(m) indicates the Court may grant an extension of time for service on its own initiative. Fed. R. Civ. P. 4(m) (stating that "the court—on motion or *on its own* after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time") (emphasis added).

      The Court does not need to analyze whether Plaintiffs would have been entitled to an extension of time for service as Plaintiffs have voluntarily dismissed their claims. [Doc. No. 29]. Rather, the Court notes the standards for granting a permissive extension of time for service in response to Defendants' argument that Plaintiffs had no basis for proceeding with their claims after Defendants filed their Motion to Dismiss First Amended Complaint. Considering the Court's discretion to grant a permissive extension of time for service, the Court does not find that Jagers-Johnson "act[ed] recklessly or

with indifference to the law" by proceeding with her claims despite having served Defendants Peak Equity Group, LLC and High Peaks Financial, LLC two days after the deadline for service. *Miera*, 143 F.3d at 1342. Because Plaintiffs never served Defendant Paul Sauer, Plaintiffs' claims against him were more questionable, but the Court cannot agree that *all* of Plaintiffs' claims had "no clear legal basis" due to "substantive and procedural issues[.]" [Doc. No. 30 at 20].

The Court does note that Jagers-Johnson's failure to comply with the rules of service did result in some multiplication of proceedings because Defendants moved twice to dismiss Plaintiffs' claim for untimely and improper service. [Doc. Nos. 12 and 26]. However, the Court does not find that conduct rose to the level of "multipl[ying] the proceedings in [the] case unreasonably and vexatiously" to warrant sanctions under § 1927. 28 U.S.C. § 1927. As Defendants have made clear, they seek sanctions related only to Jagers-Johnson's conduct after Defendants' Motion to Dismiss First Amended Complaint. [Doc. No. 36 at 2–3]. Accordingly, the time that elapsed between Defendants' Motion to Dismiss First Amended Complaint [Doc. No. 12] and Plaintiffs' Voluntary Dismissal [Doc. No. 29] is approximately two months (April 19, 2024, to June 24, 2024). And during that short period, Defendants' efforts toward dismissing Plaintiffs' claims were not entirely directed toward Plaintiffs' untimely service. Each of Defendants' Motions to Dismiss also included substantive grounds for dismissal. *See* [Doc. Nos. 12 and 26].

The Court finds Defendants' reliance on *Thompson v. C.R. Bard, Inc.*, a case from the Southern District of Georgia, is misplaced. 6:19-CV-17, 2020 WL 3052227, at

11

*1 (S.D. Ga. June 8, 2020). First, courts are granted "broad discretion" to impose sanctions pursuant to § 1927, thus courts must weigh the distinct circumstances of each case before them and might not necessarily reach the same conclusion. *See Frey*, 41 F.4th at 1245 (discussing courts' "broad discretion" to grant § 1927 sanctions and that grounds for reversal on abuse-of-discretion standard does not include that the court "would have made a different decision"). Second, the Court views the facts of *Thompson* to present a more egregious case of multiplication of proceedings than the instant circumstances. *See Thompson*, 2020 WL 3052227, at *5 (outlining the reasons for imposition of sanctions, including the complete failure to serve Defendants for over a year and the court's inability to contact counsel).

Defendants next argue that Jagers-Johnson's failure to comply with Court orders merits sanctions under § 1927. [Doc. No. 36 at 6–7]. Defendants' Motion outlines Court orders to which Jagers-Johnson did not respond, including (1) the Order to Show Cause [Doc. No. 11], (2) the Orders following Defendants' Motions to Dismiss requiring Plaintiffs to submit a "certificate of conference advising the Court of the parties' efforts and summarizing all matters that have been resolved by agreement" [Doc. Nos. 13 and 27], and (3) the Order to Show Cause regarding Plaintiffs' failure to respond to the Motion to Dismiss Second Amended Complaint [Doc. No. 28]. [Doc. No. 30 at 14, n.4]. Although Defendants identify these failures to respond to Court orders, Defendants do not explain how these failures specifically "unreasonably and vexatiously" "multipl[ied] the proceedings." 28 U.S.C. § 1927. Defendants filed their Motion to Dismiss First Amended Complaint before the time to respond to the Court's first Show Cause Order

12

had expired.[6] Regarding Jagers-Johnson's failures to submit certificates of conference, Defendants do not show that they were required to be submitted,[7] or demonstrate how those failures multiplied the proceedings. As outlined in Defendants' Motion, Jagers-Johnson participated in meet-and-confers but failed to file certificates of conference. [Doc. No. 30 at 8–9, 12]. As to Jagers-Johnson's failure to comply with the Court's June 20, 2024, Show Cause Order, Plaintiffs filed a voluntary dismissal the day their response to the Show Cause Order was due, dismissing their action. [Doc. No. 28, Doc. No. 29]. Thus, the Court does not view Jagers-Johnson's failure to comply with the Show Cause Order as multiplying the proceedings. Accordingly, the Court does not find that Jagers-Johnson's failures to comply with the above orders justifies sanctions under § 1927.

Finally, in their Reply, Defendants assert that Jagers-Johnson's Response serves as an additional basis for sanctions because "the Response reflects that the only real reason it was filed by Attorney Jagers-Johnson was 'for improper purposes, namely, to harass opposing counsel, to cause unnecessary delay in this lawsuit and to increase needlessly the cost of this litigation.'" [Doc. No. 36 at 10 (quoting *Wold v. Minerals Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983)]. The Court does not agree. First, the Court also interpreted Defendants' Motion as asserting that Plaintiffs' claims were

---

[6] *See* [Doc. No. 11 (Order to Plaintiffs to Show Cause, entered April 11, 2024, ordering Plaintiffs to show cause why they had not timely served Defendants within fourteen days)]; [Doc. No. 12 (Motion to Dismiss First Amended Complaint, filed April 19, 2024)].

[7] Those orders required certificates of conferences in any responses to the Motions to Dismiss, and here, Plaintiffs did not respond to either Motion to Dismiss.

13

baseless due to the doctrine of claim-splitting. Specifically, Defendants state, "Once Defendants raised the issues regarding the failed attempts at service and violations against the rule on claim-splitting in their Motion to Dismiss First Amended Complaint (Dkt. # 12), Attorney Jagers-Johnson nevertheless 'continued to assert bogus claims long after it would have been reasonable and responsible to have dismissed the claims[.]'" [Doc. No. 30 at 20–21 (quoting *Steinert*, 440 F.3d at 1224) (internal quotation marks omitted)]. Accordingly, the Court does not find Jagers-Johnson's claim-splitting arguments unresponsive to Defendants' Motion. [Doc. No. 36 at 8–9]. The Court fails to understand why Jagers-Johnson's arguments regarding claim-splitting were "mooted" but her arguments regarding service were not. [Doc. No. 36 at 9]. Second, the Court does not find that Jagers-Johnson's Response was only submitted for an improper purpose as it contained substantive arguments responsive to Defendants' Motion. In addition to the claim-splitting argument, Jagers-Johnson exhibited she had an objectively reasonable basis for moving forward with her claims despite the fact service was untimely. *See* [Doc. No. 35 at 7–9].

### B. Defendants are not entitled to sanctions under the Court's inherent authority because Defendants have not demonstrated bad faith.

For the Court to order sanctions pursuant to its inherent authority, Defendants must show that Jagers-Johnson acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. In Defendants' Reply, they interweave the grounds for requesting sanctions under § 1927 and the Court's inherent

authority.[8] Bad faith is a well-established requirement for sanctions under courts' inherent authority, but Defendants do not clearly define the bad faith requirement in their Motion or Reply. *See id.*

Because Defendants do not specifically enumerate the grounds upon which they request sanctions pursuant to the Court's inherent authority, the Court denies Defendants' request to the extent it is based upon the same grounds as Defendants' request for § 1927 sanctions. Since the Court did not find the conduct referenced in the previous subsection met the standards for § 1927 sanctions, the Court cannot conclude that conduct amounts to the higher standard of bad faith required for the imposition of sanctions pursuant to its inherent authority. The Court, therefore, does not find that Jagers-Johnson's continuance of Plaintiffs' suit for untimely service or Jagers-Johnson's

---

[8] The Court notes the requirements for sanctions under § 1927 and under its inherent authority are distinct because the Court must make a specific finding of bad faith to impose sanctions under its inherent authority. Because Defendants do not clearly enumerate the conduct they allege amounts to bad faith, the Court has scoured their Motion and Reply for references that Jagers-Johnson acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46.

failure to comply with certain Court orders demonstrates bad faith.[9] Nor does the Court find that the allegations made in Jagers-Johnson's Response amount to bad faith.[10]

IV. **CONCLUSION**

For these reasons, the Court denies Defendants' Motion for Sanctions.

IT IS SO ORDERED this 12th day of February 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[9] Defendants express concern about being subject to a further federal lawsuit as a reason for their sanctions request. *See* [Doc. No. 30 at 10 (explaining that Jagers-Johnson stated during a meet-and-confer that, "if necessary," Plaintiffs would later refile this lawsuit to avoid the existing service issues); Doc. No. 30 at 21 (arguing the Court should impose sanctions under its inherent authority to prevent further abuse)]. However, where a plaintiff dismisses an action and then files it again in federal court, Rule 41(d) allows for the court to order payment of costs of the previous action.

[10] To the extent Jagers-Johnson seeks relief in her Response, any such request is improper. *See* LCvR7.1(c).